# Robinson *versus* Bickley.

A submission of a matter in controversy to arbitrators, is an agreement by the parties, that the arbitrators shall, by award, define and settle their respective legal rights and duties in relation thereto, and that they will respectively obey the award.

When an award is made pursuant to the terms of the submission, it becomes the law by which the parties are to act in relation to the subject-matter in dispute; and they can be relieved from it only by making clear proof of such circumstances of mistake, corruption, or fraud, as would justify an equitable interference with the award.

An award that appears, on its face, to be executed according to the terms of the submission, must be presumed to be valid, until it be proved that the arbitrators did not consult together in forming the conclusions expressed by it, or that there is some other valid objection to the proceeding.

Arbitrators are not governed by the practice of the courts, and may follow any fair practice of their own; and the presumption always is, that they have proceeded fairly and regularly, until the contrary is shown.

If a majority have power to make an award, and do make it, the presumption is, that the hearing, consultation, and execution were regular, and that the minority have refused to join in the execution.

Proof that one of the arbitrators was absent at the time the award was signed, does not set aside the presumption in favour of its regularity; for he

[Robinson *v.* Bickley.]

may have had notice to attend, or may have refused to act further; and in either case, the award is valid without his attendance.

When a cause has been fully heard and consulted upon by all the arbitrators, and the elements of the award agreed upon, and one of them dissents and gives the others to understand that he will not meet them again, or sign the award, the proceeding is not vitiated by the fact that the award was afterwards drawn up and executed by one of the majority, and by him carried to the other, who executed it in his presence.

When an award has been drawn up and signed by the majority, and delivered to one of the parties, and the other has learned from the dissenting arbitrator that it is unfavourable to him, his revocation of the submission, after that, comes too late.

When men selected by the parties consent to settle their disputes for them, every presumption ought to be made in favour of the integrity and regularity of their proceedings.

Appeal in Equity from the Common Pleas of *Philadelphia.*

This was a bill in equity, by John Robinson against Lloyd W. Bickley, for the specific performance of an award. The answer of the defendant alleged that the paper purporting to be an award, recited in the complainant's bill, was illegally made, and that he had previously executed and served a revocation of the submission. The complainant filed a general replication.

The following facts appeared from the master's report:—That on the 23d June 1848, Robinson executed and delivered to Bickley, a bond and mortgage for $5000, on a house and lot on the north side of Arch street, at about the distance of 213 feet 8 inches westward from the west side of Delaware Front street, in the city of Philadelphia.

That subsequently difficulties and differences, relating to this and other matters, having arisen between the parties, for the purpose of adjusting the same, they made an agreement under their hands and seals, dated the 17th March 1849, and a supplemental one, also under their hands and seals, dated the 19th March 1849, referring all matters in dispute between them, to Charles S. Boker, George W. Ridgway, and James R. Smith, who were to be sworn or affirmed to decide justly between the parties. The award of a majority of the referees was to be final, and without appeal; it was to be consummated within three months from the date thereof; and the referees, or a majority of them, were to make out their award in duplicate, and deliver a copy to each party, within three months from the date of the submission.

That on the 19th March 1849, the said referees were duly affirmed, according to the provisions of the agreement, and in pursuance thereof, held numerous meetings, at which the parties and their respective solicitors attended, and heard the parties and their proofs. Their last meeting was on the evening of the 21st May 1849. On that evening the referees had a long conference; Smith and Ridgway arrived at a definite conclusion, to which Boker would not assent. They both understood Boker to say

[Robinson *v.* Bickley.]

that he would not meet again, and Smith said the same.   There was no adjournment to any other time, nor arrangement for any future meeting.   They never met together again.

The terms which Smith and Ridgway had determined on and submitted to Boker, who declined acceding to them, were definitively settled that evening, in the presence of Boker, as they were afterwards drawn up in the award.   Smith and Ridgway having, on that evening, definitively settled their award, in the presence of the other referee, concluded their labours, with the understanding that it should be formally drawn up on the following morning, and signed by them.

On the morning of the 22d May, before 12 o'clock, the award was written out in duplicate, signed by Smith and Ridgway, and taken by Ridgway to Boker.   It was not expected that Boker would sign it, from his remarks on the evening before, but they thought it proper to extend to him the courtesy of submitting it to him again : Boker was out; Ridgway then served one copy on the complainant's counsel, and returned with the other to Boker, who declined signing it, saying he had determined on another course.   He desired to state his reasons for not signing it on the back.   It was left with him for that purpose.

On the morning of the 23d May, Ridgway received back the paper, with the following endorsement, dated 22d May 1849, and signed C. S. Boker :—" The undersigned, one of the referees to whom was submitted various matters in dispute between Lloyd W. Bickley and John Robinson, declines signing the within award, preferring that the parties be referred back to their suits at law." Ridgway served this copy of the award upon Bickley, on the 24th of May.   He called at Bickley's office, several times, for that purpose, on the 22d, but could not find him—he resided out of town, and his counsel declined receiving it for him.

On the 22d May 1849, Bickley executed a revocation of the submission, and on the afternoon of that day, between three and four o'clock, after the signing of the award by Smith and Ridgway, and the endorsement of Boker thereon, this revocation was served on Smith and Ridgway, and, on the 23d, upon Boker.

In addition to this, it appeared in evidence that Bickley had called on Boker early on the morning of the 22d May ; that he there heard that the award was likely to be unfavourable to him ; that he then notified Boker verbally that he intended to revoke ; and that it was after this interview that Boker declined to sign the award, subsequently presented by Ridgway.

The award made by the majority of the referees, under their hands and seals, was as follows :—

" 1. That the bond and mortgage given by John Robinson to Lloyd W. Bickley, June 23d 1848, for $5000, should be given up to said Robinson.   That said Bickley should within ten days from

[Robinson v. Bickley.]

the date thereof, acknowledge satisfaction upon the record of said mortgage and said judgment, and pay the costs of said entries.

" 2. That said Bickley should within ten days withdraw the levy made by him upon certain goods claimed by said Robinson, and should stay all proceedings and enter satisfaction at his own cost in the feigned issue arising therefrom.

" 3. That said Bickley should pay to said Robinson $1500, within sixty days from the date thereof, or within ten days give the said Robinson such good endorsed notes for said amount, drawn in such manner, and at such time as should be satisfactory to said Robinson.

" 4. That the costs attending the reference should be paid by Robinson; and that upon the fulfilment of these conditions, the said Bickley and Robinson should respectively and mutually deliver to each other a full release of all demands in any manner arising; and that the books of Perrine & Co., produced in evidence as the property of Robinson, should be given up to him at once."

The defendant having died, pending this suit, it was revived against Margaret Bickley, his executrix; and on the 7th July 1856, the court below made a decree that the award be carried into effect, on or before the first day of August next ensuing. From this decree the executrix appealed to this court.

*D. W. C. Morris*, for the appellant.—The written paper and not the opinions of the arbitrators is the judgment, and their con currence in that is so essential, that if the paper is signed by them, not in the presence of each other, and at the same time, it is no award: Wade *v.* Dowling, 4 *Ellis & Bl.* 44; Peterson *v.* Ayre, 15 *Com. B.* 724; Pering *v.* Heymer, 3 *Ad. & Ellis* 245; Stalworth *v.* Irms, 13 *M. & W.* 465-9. That act must be done at a meeting, known to all the arbitrators to be the one at which final judgment is to be given: Wade *v.* Dowling, *ut sup.;* Pering *v.* Heymer, *ut sup.;* Little *v.* Newton, 2 *M. & G.* 351; Stalworth *v.* Irms, *ut sup.;* Wright *v.* Graham, 3 *Exch.* 131; Templeman *v.* Reed, 9 *Dow. Prac. Cas.* 962; Moore *v.* Ewing, *Coxe* 147, 151; *Watson on Arb.* 101 *et seq.*

But before this award was made, the authority was revoked. The rule is, that until actual notice of an award *made* (not intended), the party may revoke: *Watson on Arb.* 131; Hungate's Case, 5 *Rep.* 103; Block *v.* Palgrave, *Cro. Eliz.* 797; Knowelton *v.* Homer, 15 *Ship.* 552, Green *v.* Pole, 6 *Bingh.* 443; Skee *v.* Coxon, 10 *B. & C.* 483.

In Kunckle *v.* Kunckle, 1 *Dall.* 364, the third arbitrator had expressly withdrawn, leaving the award to be made by the two, after it had been definitively settled in the presence of the three. In Oxley *v.* Oldden, 1 *Dall.* 430, the revocation was the day

after signing, and obviously after publication. The only point taken in Pollock *v.* Hall, 4 *Dall.* 222, was on the right to discontinue; and in Grubb *v.* Grubb, 2 *Dall.* 191, whether a *certiorari* would affect an award already made: Ruston *v.* Dunwoody, 1 *Binn.* 42, was an attempt to rescind a rule of court, not to revoke the authority: Thompson *v.* White, 4 *S. & R.* 135; Monongahela *v.* Fenlon, 4 *W. & S.* 211; and McGheehen *v.* Duffield, 5 *Barr* 499, have no bearing on the point for which they were cited by the master: Brooke *v.* Mitchell, 6 *M. & W.* 473, puts the true distinction—the award is made as to the arbitrators when they have put their hands to it, and are *functi officio*, though the party is not bound until he has notice.

*Otterson* and *Grout*, for the appellee.—The appellant has no standing in court on the face of his own agreement, which provides that the award shall be final, and without appeal; Rogers *v.* Playford, 2 *Jones* 181; Bingham's Trustees *v.* Guthrie, 7 *Harris* 423; Gallup *v.* Reynolds, 8 *Watts* 424.

Neither a court of law or equity will set aside an award within the submission, except for partiality and corruption in the arbitrators, mistakes on their own principles, or fraud and misbehaviour in the parties: Brown *v.* Green, 7 *Conn.* 536; Herrick *v.* Blair, 1 *Johns. C. R.* 101; Head *v.* Muir, 3 *Rand.* 122; Shermer *v.* Beale, 1 *Wash. Va.* 11; Wheatley *v.* Martin, 6 *Leigh* 62. Nothing of that kind is alleged here, and if so, would be precluded upon the judgment of the facts below. The decision of the common pleas thereupon cannot be reviewed unless there be the errors of law patent on record: Rogers *v.* Playford, 2 *Jones* 181; Sands *v.* Rolshouse, 3 *Barr* 456.

Everything is to be intended in favour of awards: Ott *v.* Schroeppel, 1 *Seld.* 482; Carter *v.* Sams, 4 *Dev. & Bat.* 182; Maynard *v.* Frederick, 7 *Cush.* 247.

Unless there has been corruption or partiality in the arbitrators, or fraud practised by the parties, the award is conclusive, and the decision of the arbitrators on the facts will not be reviewed by the court: Kunckle *v.* Kunckle, 1 *Dall.* 364; Rogers *v.* Playford, 2 *Jones* 281; Browning *v.* McManus, 1 *Wh.* 177.

This award was properly made. It was made by a majority, who were competent to make it: Carpenter *v.* Wood, 1 *Met.* 409; Wheatley *v.* Martin, 6 *Leigh* 62. Awards will not be disturbed unless there be misbehaviour, or some error apparent on the face of the proceedings: Kunckle *v.* Kunkle, 1 *Dall.* 364; Rogers *v.* Playford, 2 *Jones* 281; Sands *v.* Rolshouse, 3 *Barr* 456; Bingham's Trustees *v.* Guthrie, 7 *Harris* 419. Nor will the court disturb the finding of referees any more than the verdict of a jury on a difference of opinion on the weight of evidence: Cromwell *v.*

[Robinson v. Bickley.]

Owings, 6 *H. & J.* 10 ; Vansteenburgh v. Hoffman, 15 *Barb.* 28 ; Williams v. Craig, 1 *Dall.* 314.

A submission whether by deed, parol, or rule of court, like any other authority is countermandable before execution : Bingham's Trustees v. Guthrie, 7 *Harris* 423 ; Power v. Power, 7 *Watts* 213. But after a question has been discussed before, and decided by referees, it is too late : Roosevelt v. Thurman, 1 *Johns. Ch. R.* 220. The award was complete, at latest, on the morning of the 22d day of May 1849, and notice had been given to all the referees, and all parties that could be found, before the revocation was served.

The opinion of the court was delivered by

LOWRIE, C. J.—All the principles and all the essential facts of this case may be stated in a few plain propositions.

1. A submission of a matter in controversy to arbitrators is an agreement by the parties that the arbitrators shall, by award, define and settle their respective legal rights and duties in relation thereto, and that they will respectively obey the award.

2. When an award is made pursuant to the terms of the submission, it becomes the law by which the parties are to act in relation to the subject-matter that was in dispute, and they can be relieved from it only by making clear proof of such circumstances of mistake, corruption, or fraud as would justify an equitable interference with the award.

3. An award that appears on its face to be executed according to the terms of the submission must be presumed to be valid until it be proved that the arbitrators did not consult together in forming the conclusions expressed by it, or that there is some other valid objection to the proceeding.

4. Arbitrators are not governed by the practice of the courts, and may follow any fair practice of their own ; and the presumption always is, that they have proceeded fairly and regularly until the contrary be shown.

5. If a majority have power to make an award, and do make it, the presumption is, that the hearing, consultation, and execution were regular, and that the minority have refused to join in the execution.

6. Proof that one of the arbitrators was absent at the time the award was signed, does not set aside the presumption in favour of its regularity ; for he may have had notice to attend, or may have refused to act further, and in either case the award is valid without his attendance.

Considering this award under the influence of these presumptions, it is not necessary for us to affirm all the facts found by the master ; for it is enough to say that the evidence is not sufficient to set aside the presumptions in favour of the validity of the award.

[Robinson *v.* Bickley.]

7. When a cause has been fully heard and consulted upon by all the arbitrators, and the elements of the award agreed upon, and one of them dissents therefrom, and gives the others to understand that he will not meet with them again or sign the award, the proceeding is not vitiated by the fact that the award was afterwards drawn up and executed by one of the majority, and by him carried to the other, who then executed it in his presence : 1 *Dall.* 364 ; 1 *Metc.* 409 ; 7 *Cush.* 251 ; 2 *Jac. & Walk.* 258 ; 2 *Man. & Gr.* 360 ; 13 *Mees. & W.* 466 ; 8 *East* 319 ; *Caldwell on Arb.* 95 ; *Billing on Awards* 142.

Such seems to us to have been the mode in which this award was executed, and we cannot say that it was fatally irregular.

And on principle and authority we think that the attempted revocation of the submission was ineffectual.

8. When an award has been drawn up and signed by the majority, and delivered to one of the parties, and the other has learned from the dissenting arbitrator that it is unfavourable to him, his revocation of the submission after that comes too late : 1 *Dall.* 430 ; 1 *Binn.* 42 ; 5 *State R.* 500 ; 6 *Mees. & W.* 473 ; *Watson on Arb.* 132.

The attack made by the defence on the integrity of the arbitrators was most ungracious, and is not supported by the evidence.

9. When men selected by the parties consent to settle their disputes for them, every presumption ought to be made in favour of the integrity and regularity of their proceedings : 4 *Price R.* 234 ; 28 *State R.* 178.

It seems to us that the Court of Common Pleas were right in decreeing to enforce the award.

Decree affirmed at the defendant's costs.